CITY OF JACKSON *v*. BUCKLEY.

[85 South. 122, In Banc. No. 21313.]

1. MUNICIPAL CORPORATIONS. *Appeal from assessment order is exclusive remedy, and if not taken assessment cannot be collaterally attacked.*

Under chapter 260, Laws 1912, granting municipal authorities the power to assess the cost of street improvements to abutting property owners, and allowing the owner an appeal from the order fixing the assessment, the remedy by appeal is exclusive, and if no appeal is taken the assessment is final, and cannot be collaterally attacked by bill in equity.

2. MUNICIPAL CORPORATIONS. *Landowner cannot set up defective performance of contract as bar to assessment in absence of fraud.*

In a suit by a municipality to foreclose the statutory lien for street paving, the municipality, in the absence of fraud, is the judge whether the special improvements have been done according to contract. So, in absence of fraud or a fundamental difference between the work contracted for and the work accepted, a defense cannot be made that the contract has not been performed according to its terms.

3. MUNICIPAL CORPORATIONS. *Owner assessed for paving cannot complain that street railway was not required to pave center of street.*

An abutting owner assessed with the cost of paving one-third of the street in front of his property cannot complain at his assess-

ment on the ground that the municipality, though empowered
so to do, failed to require a street railway company to pave the
center of the street occupied by its car tracks.

APPEAL from chancery court of Hinds county.
HON. FRANK ROBERSON, Special Chancelor.

Suit by the City of Jackson against Mrs. Agnes
Buckley, with cross-bill by defendant.   Decree for de-
fendant, and complainant appeals.   Decree reversed,
bill of complaint sustained, and cross-bill dismissed, and
cause remanded.

*W. E. Morse,* for appellant.

I.   The court erred in dismissing the bill of the city
of Jackson. The principles in this case have been passed
upon by this court in case of *Edwards House* v. *City of
Jackson,* — So. 14; *Sparks* v. *City of Jackson,* 79 So. 67.

The property owners were assessed with the cost of
the paving done and they did not appeal therefrom.
They were not required to do any more, or less, work
by the elimination of the car line, neither were they
compelled to pay any more for the special assessment.
This is the same proceeding had in the Edwards House
case from start to finish.   The Edwards House case was
upheld by all subsequent cases of this court.

The court in the case of *Sparks* v. *City,* 79 So. 67,
recited in its opinion that the proceeding was identically
the same with the proceeding in the Edwards House
case.   The contention of the city being upheld in the
Sparks case.

(A) The city had a right to eliminate the paving of
the street railway property.  · The city of Jackson
eleminated the Street Railway in the Edwards House
case and this was one of the grounds of the demurrer
raised in that case by counsel representing appellees at
the present time.   There were several changes in the

Edwards House case, change of grade, eliminating the Street Railway and several other changes. These questions were all before the court at the time it was passed upon, but the court did not consider them of enough importance to even set them forth in its opinion. (28 Cyc., page 1111) Estates: "That the city may pave the rest of the street at the cost of the abutting property owners whether the street car line has been paved or not." Citing the case of *Baker* v. *Savannah,* 86 Ga. 301, 12 S. E. 580, which clearly upholds the right of the city to eliminate the street car line and compel the abutting property owners to pay for the paving as done. The court has really passed upon this case in the case of *Sparks* v. *City of Jackson,* 79 So. 67.

The following cases are taken from different states and uphold the contention of the city, that by eliminating the street car line from being paved it did not relieve the property owner from paying for the special assessment. *Lake Erie & W. R. Company* v. *Walters,* 13 Ind. App. 275, 41 N. E. 465.

(A) The amount of paving to be done or paid for by the property owners was not changed by leaving a grass plot or neutral ground. There were no charges in the specification as the original ordinance provided creosote wood block and there was no protest by the property owners. The ordinance declaring the work necessary gave notice to the property owners that they were to pave or pay for paving one-third of the street, and notified the street car company that it was to pave between its tracks and for two feet on either side thereof.

The ordinance eliminating the street car line area from being paved did not change or affect the work to be done by the property owners. The same material was used that was originally adopted and the only evidence upon the question was that it was done in a good and workman-like manner. But, says the property owners, the work that we were notified to do was adopted

August 1, 1911, and we were not notified of the elimination of the car line in said notice. The supreme court had held repeatedly that the notice is a notice to do the work and not notice of the necessity of the work. *Greenville* v. *Harvie,* 31 So. 425; *City of Jackson* v. *Williams,* 45 So. 551.

The statute in this proceeding makes the municipal authorities *quasi*-judicial bodies, and after they have acquired jurisdiction by declaring the work necessary they were in practically the same position as a party who files his bill in chancery and has a summons served on the defendant. As it is the duty of the defendant to contest every step taken by the plaintiff without further notice, just so it becomes the duty of the property owner to follow the different steps taken by the board, to protest, when they desire to protest, to appeal when it is his duty to appeal, and the city is not required to give separate notice of each and every step taken, as said by Judge MAYES in the case of *Edwards House* v. *City of Jackson,* 45 So. 14.

II.   The court erred in allowing any evidence as to set-off or recoupment. (A) Because enforcing the paving lien is a special statutory action and there is no provision for set-off or recoupment. *Bayes* v. *Pointville,* 1916B, L. R. A. (N. S.) page 1031; *Bodley* v. *Finley,* 111 Ky. 618, 64 S. W. 439; *Purdy* v. *Drake,* 17 Ky. L. Rep. 819, 32 S. W. 939; Dill Mun. Corp., 810; *Richardson* v. *Mehler,* 111 Ky. 408, 63 S. W. 957.

The general rule supported by a majority of the cases is that no set-off or counterclaim is admissible against demands for taxes, since they are not in the nature of contracts between parties but the positive acts of the government through its agents, binding upon the inhabitants, and to making and enforcing of which their individual consent is not required.

The rule was so stated in *Apperton* v. *Memphis,* 2 Flipp. 363, Fed. Cas. No. 497, but the question in the case was one as to the power to impose an assessment on the property in question. And under this rule damages sustained by a taxpayer by reason of the negligent performance of the work under a contract for macadamizing a street cannot be set up as a counterclaim in an action to recover a special tax assessed therefor. *Burlington* v. *Palmer,* 67 Iowa, 681, 25 N. W. 877.; *Himmelmann* v. *Spanagel,* 39 Cal. 389.

So, a counterclaim in a suit to foreclose a statutory lien for an assessment for the construction of a sidewalk upon the theory that the work was not done according to the plans and specifications, and that the abutting owner assessed therefor was damaged thereby, cannot be maintained. *Darnell* v. *Keller,* 18 Ind. App. 103, 45 N. E. 676.

And unliquidated damages arising *ex delicto* on a claim by a landowner that in the construction of a sewer the contractor carelessly, recklessly, negligently, and by the unskillful use of high and powerful explosives, injured a building on his land, cannot be set-off against a claim for special tax for the construction of the sewer. *Philadelphia, ex rel., Jones* v. *O'Conner,* 9 Pa. Dist. R. 230, 23 Pa. Co. Ct. 653.

Nor are the damages sustained by a landowner a proper subject either of counterclaim or set-off against a special assessment therefor, collection as such assessment for the construction of a ditch or drain and to enforce the statutory lien therefor on real estate. *Laverty* v. *State ex rel. Hill,* 109 Ind. 218, 9 N. E. 774.

III. The court erred in failing to find for the city of Jackson and in failing to give a decree for the amount of the assessment, interest, attorney's fees and court cost. When the property owners petitioned the city of Jackson to do the work, they thereby estopped them-

selves from asserting any irregularities to the paving proceeding. To hold otherwise would be an injustice, for the reason that the people petitioned for the work to be done, they set the machinery in operation and the court will not allow them to sit complacently by, wait until the work is completed and then attempt to find some irregularities in the proceeding whereby they attempt to defeat the proceeding. 28 Cyc. page 1172. Our own courts in the case of *Meridian* v. *Hudson,* 71 So. 574 and *Oliver* v. *Macon,* 71 So. 575, has upheld this theory.

The property owners cannot offset any of their claims against the city because an off-set is based upon a sum certain and is not applicable in other cases. They cannot recoup any damage for the reason that recoupment is purely a common-law remedy and this is an equity proceeding. They cannot recoup or counterclaim for the further reason that this remedy is not available to them in this class of cases.

Conclusion. The property owners petitioned for the work to be done. The work was declared necessary and the property owners had notice thereof. The property owners did not protest, appeal, or offer to do the work themselves. They had a right of protest and appeal from the ordinance eliminating the street car line from paving and they did not avail themselves of it. The amount of work to be done by themselves, or to be paid for was not changed in the slightest. They did not appeal from the special assessment. They sat complacently by and saw the work done and enjoyed the benefit thereof and did not raise their hand until suit was actually brought. They have no right of set-off or recoupment against the city as it is not applicable in the class of cases.

The lower court was in error in dismissing the bill of the city, but should have rendered a decree for principal, interest, attorney's fee and court cost.

*Green & Green,* for appellee.

First:   Turning to section 3411 of the Code, its provisions are:   "When the mayor and board of aldermen shall deem an improvement which requires unusual outlay .  .  .  necessary, a special tax therefor may be levied.   In such case, the board shall, by resolution, declare such work or improvement, describing it, necessary, and publish the resolution as an ordinance · is required to be published; and if a majority of the resident owners of the property .  .  .   to be benefited .  .  .   do not, within twenty days after the passage of the resolution, file with the clerk, their protest in writing against such improvement, the board shall have power to cause such improvement to be made and to contract therefor and to levy the special assessment of taxes provided in the next section."

Under this power as the sole authority, upon June 6th we have the passage of a resolution which did not in any· way describe the improvement.   In fine, it is the identical resolution that was under consideration in the case of *Jackson* v. *Williams,* 92 Miss. 315, and *Edwards House* v. *Jackson,* 91 Miss. 429.   This resolution is fatally defective in certain particulars.

(A) Section 3011, Code 1892, requires this: "The board shall, by resolution, declare such work or improvement describing it necessary."   The law requires that there shall be notice so that all who have· a right to object, may be advised of what is to be done, and do so or not. It is a condition precedent to the right of the city to proceed by ordinance and before by ordinance and before any step is taken thereunder, that the resolution which is required to describe the improvement shall be published for a period of three weeks.   *Nugent* v. *City of Jackson,* 72 Miss. 1052.

The obligation being to give notice, to enable those who have a right to know, their consent thus given being

an essential prerequisite to the doing of the work, under
*Macon* v. *Patty*, 57 Miss. 378, each of them should know
accurately what the improvement is to be, and thus its
probable cost and by whom paid.  It is elementary that
when an election is given by law that he who has the right
to elect, as a condition, has the right to demand knowl-
edge of everything necessary to enable him to make an
intelligent choice.

(B)  This ordinance did not declare what portion of
the street should be paved with brick, stone or asphalt;
nor did it specify that any portion of the cost should
be imposed upon an abutting owner.  As was said in
*Nugent* v. *Jackson*, 72 Miss. (1895) page 1052, constru-
ing section 3011 of the Code of 1892:  "That when any
improvement which requires 'unusual outlay and costs
in excess of the general improvement fund' is deemed
'necessary' by the mayor and board of aldermen, they
shall so declare by resolution, describing the improve-
ment."  *Railroad Company* v. *Jackson*, 96 Miss. 576;
*Jackson* v. *Williams*, 92 Miss. 315; *Bryan* v. *Greenwood*,
73 So. 728.

(C)  To describe a thing is thus defined in 14 Cyc.,
226:  "To delineate or mark the form  or figure  of;
trace out outline."  And in 9 Am. & Eng. Ency., Law
(2 Ed.), 402, it is said: "Describe: to describe means to
define by properties or accidents; to represent by words
or other signs to give an account, to relate." "Descrip-
tion: description is defined, as (1) a delineation or ac-
count of a particular subject by the recital of its charac-
teristic accidents or qualities."   And in the notes the
following  appears:  "3 Black's  Law  Dict., quot-
ed in *McGowan* v. *MacLaw*, 16 Mont. 234: Every acknowl-
edged dictionary in the English language would sanction
as an accurate definition of the word "description," a
representation that gives to another a view of the thing
intended to be represented.  *In re Fitzpatrick*, 19 L. R.
A. 210."

If there is anything that this ordinance does not do, it is to describe the improvement.

The specifications describing the improvement were not adopted by the board until August 1, 1911, when, for the first time, the owner has presented to him, to some extent, that which was subsequently done.

(2)    Furthermore, this ordinance does not declare that it shall be done at the expense of the abutting owners nor in any way pro rate the expense between such owners. *Greenville* v. *Harvey,* 79 Miss. 756. But it will be replied, that upon August 1, 1911, the plans and specifications were adopted and that, therefore the prior notice of June 7th was validated, and therefore, will be cited. *Edward House* v. *Jackson, Jackson* v. *Williams,* and *Bryan* v. *Greenwood.*

But the specifications as thus adopted were not the specifications under which this work was done. They were adopted finally upon September 5, 1911, and left down the middle of the street, a parkway, which if the thing that is primarily responsible for this litigation, by reason of the fact that every time it rains the water runs down the middle and creates gullies, and makes the street, by this condition, and other conditions, absolutely impassable.

Of course, this does not appear in the demurrer, but as there is a cause or number of causes for every lawsuit, we are frank to say that this is the cause of the trouble originally. Now, in order, therefore, to comply with the ruling of the *City of Jackson* v. *Williams,* 92 Miss. 316, which is quoted *supra,* it is essential that we interpret three ordinances together.

First, the ordinance of June 7th; next, the ordinance of August 1st; next, the ordinance of September 5th. Up to that time the plans and specifications had not been completed, and the taxpayers could not know what they were required to do or against what they were required

to protest. It will be noted that upon September 5th, last, an ordinance was passed relative to the plans and specifications.

We call the court's attention to the fact that section 301 of the Code of 1892 is brought forth as section 3411 of the Code of 1906, and the same is true of section 3012, being section 3412. When, therefore, the completed plans and specifications were made upon September 5th, at that time, in order to validly impose this lien upon the property, it was essential at that time that, under section 3411, there should have been a publication to the taxpayers so that they might protest.

This publication required that the special improvement should be described, but in the instant case appellee avers, and the record shows, and it appears from the ordinance of October 3; in other words, the last notice, which was given after the expiration of the three weeks' publication, was given less than three days after the adoption of the plans and specifications.

Let us notice further. The publication was required to be made for three weeks under section 3411. This resolution was required to be published as an ordinance is required to be published, and as held in the Nugent case, as, under section 3401, this requirement had to be for one week, which would have, at the minimum, given until the tenth day of September.

Then, this section 3411 required that there should be twenty additional days after that should expire within which the protest could be made. This would have expired upon September 30th, and it was only contended that the street commissioner could, under order of the board, after having given thirty days' notice to the owner or occupant, proceed to do the work.

In order to put the taxpayer in default, after the expiration of the one week's publication period and the twenty days it was required: "If the owner of the property fails to make the special improvement within

twenty days after the ordinance becomes operative, then the street commissioner shall, upon order of the board, after giving thirty days' notice to the owner or occupant of each piece of property to be assessed : . . make the repairs or construct the improvement.''

This notice had to be given to the owner or occupant, and it had to be given after the expiration of twenty days after the ordinance became operative, whether the paving of two sides is not open to judicial discussion. The precise point has been passed on and decided in favor of the defendant. See *Pels* v. *People,* 159 Ill. 580, where there was a reduction of the pavement from sixty-one feet to fifty-three feet, and it was held that the proceeding had to be initiated again. See also, *Chicago* v. *Ayers,* 212 Ill. 60; *Henderson* v. *Lambert,* 14 Bush. 24; *Brewster v. City,* 3 Stockton, 117.

As was said in *Jackson* v. *Williams, supra,* ''but if we were ruling as to the invalidity of this ordinance, still the city was without power to tax the cost of constructing these sidewalks against the abutting property, because the five days' notice required by Code of 1892, section 3012, was not served upon the property owners as required.''

In the instant case, this notice to do the work could not be served until after the expiration of the time at which the owners themselves had the right to do it, and their right to do it had not ceased before September 30, 1911. In the brief for the city the first contention made is this: ''Does the exemption of the street railway company for paving release the property owners from any liability whatsoever?'' We do not take issue or discuss this proposition because it is not, in our judgment, essential in this cause, because the plans and specifications for the paving of the street, were fundamentally and essentially changed, and the improvement was not constructed in accordance with the prior plan under

which the work was to be done, and as to which the complainant thought it would be done.

The question is not as to the power of one taxpayer to take advantage of the failure to assess a second taxpayer. We do not contend that, but as to whether the city can impose a liability upon an abutting owner for an entirely different improvement from that which was originally made the basis of the assessment and against which there was no opportunity to protest, and as to which the city did not proceed as the law said it should proceed.

The second question which counsel ask is this: "Does the releasing of the street car company make such a change in the plans and specifications as to affect the work to be done by the property owners or change in any manner the part which the property is to pay?

As to whether or not there is a change in the improvement, there is not a decision to the contrary, and counsel in their brief have not cited any. That the change is fundamental is shown by all the authorities; and that furthermore, the portion which the street car company is to pave did not add to or take from the burdens of the abutting property owners does not appear from the records, because it did not appear that precisely one-third of the paving was omitted.

We admit that the property owners may be charged by the municipality with one-half, not the entire, cost of paving the street upon which their property abuts. The law so expressly provides. We further admit that the city may require the property owner to pave or pay for one-sixth of the entire cost of the street. *Edwards House Co.* v. *City,* 91 Miss. 429, or, as was held in Ducan v. *Grenada,* the city can do what was there said.

The law requires that the notice with reference to making the improvement shall describe it, the purpose of this description is as stated: Here, these plans and specifications were not on file till September 5th, if then, and so that which was there required could not be done.

In *Jackson* v. *Williams, supra*, 317, it is said: "When a municipality is proceeding under Annotated Code 1892, sections 3011, 3012, it is not proceeding under its general powers of ordinances, but is proceeding under the special powers conferred on it under special circumstances, and it must pursue with strictness all the conditions precedent to its right to exercise the particular power.

A compliance with these conditions constitutes its power to act, and is jurisdictional in its nature. Mere irregularities and informalities will not invalidate the proceeding; but when there has been a substantial non-compliance with the statute, it is fatal to the proceedings, and the failure to duly inform the property owner, in an ordinance duly published, of the kind and character of the walk intended to be laid, thereby failing to give him such information as would enable him to intelligently determine whether he desired to protest against the intended improvement, is a fatal departure. It is manifest from the statute that the legislature intended to give the property owner every opportunity to act intelligently and with full knowledge."

Therefore, did the city give the Merchants Bank & Trust Company every opportunity to act intelligently and with full knowledge? We admit, under the Edwards House case, and the Greenwood case, that these specifications are to be construed together, but until and unless they are so construed, there is no information which is requisite and necessary, and until that is given, then there can be no compliance with section 3412.

We have no fault to find with the citation from 28 Cyc., page 111, nor the case of *Bacon* v. *Savannah*, nor do we in any way challenge the *per curiam* opinion in *Shirley* v. *Gulfport*, because that case was correctly decided upon in 56 L. R. A., page 905, and confidently submit that the performance which was had by the city in this case varied materially from the original plans adopted and which were published as being the plans

under which this work would be done. This was said in *Church* v. *People,* 174 Ill. 366. ''The ordinance being the sole authority for the construction of an improvement by special assessment, a substantial compliance is requisite; if not, the same is void.'' See, also, 2 Cooley on Taxation, 1158-1234-1251, and especially, 1280.

It was held in *Rossiter* v. *City,* 151 Ill. 494, that any material deviation from the original plans and specifications invalidates the assessment. See, also, as directly controlling, Hamilton on Special Assessments, 392.

As was said in 56 L. R. A. 923, the authorities have no power to dispense with a substantial compliance, and the defect, if it constitutes a substantial departure from the authorized work or renders it a different improvement from that which was authorized, may be interposed as a defense against the assessment for the improvement, notwithstanding an acceptance of the work on the part of the authorities.

In this case, are two strips of pavement the same improvement as an entire paved street? The evidence shows that the center of the street has never been paved, although originally it was begun from curb to curb, yet, notwithstanding such beginning later the improvement, as thus outlined, was abandoned; and by so doing, the improvement has almost wrought the destruction of the property of the appellee.

The street buckles in the middle, so as to be impassable the great gully is washed, and from the fact that it is not totally paved, dust and dirt accumulates upon it to such an extent as to render the property in large measure, less valuable.

In 28 Cyc., the court said: ''Departure from ordinance or resolution. The improvement must conform substantially to the ordinance or resolution authorizing it, and a departure from such ordinance or resolution materially affecting the location, nature, or extent of the improvement will invalidate the assessment. A minor

variance, however, not prejudicial to property owners, will be disregarded, and, if more work is performed than was authorized, the cost of the authorized portion is separable, may usually be assessed. In case the work is entrusted to commissioners with power to make a change in the plan as it proceeds, it has been held that the fact that the work as completed is different from that as described in the plan adopted by the council will not invalidate an assessment.''

''We therefore insist that this is a departure materially affecting the location, nature and extent of the improvement, and, under such circumstances, no assessment can be made. See 28 Cyc. 1138, and notes.

Counsel cites as supportive of contention, *Moran* v. *Lindell,* 52 Miss. 229; but the only point there was, that it was held that an abutting owner could not refuse to pay for an improvement consisting of a pavement in the center of the street, whereunto, the abutting owners' property was appurtenant. In *Voight* v. *Buffalo,* 133 N. Y. 463, on page 470, the court said: ''We think that the mention of the forty-two feet in width of Broadway in the resolution of intention to repave was merely descriptive of the width of the street from curb to curb—and it was not directory as to the amount of repavement to be done.''

There was no intention originally to pave from curb to curb and the city in addition, was vested with plenary power to repave. *Railroad Company* v. *Walters,* 13 Ind. App. 276, merely held that recovery could be had where the contractor had complied, as nearly as possible, with his undertaking, strict compliance having been prevented by the laying of a switch.

In *Bank* v. *Hayward,* 62 Mo. App. 550, there was no requirement of a complete pavement from curb to curb, and the intention originally to omit was but consummated in the work done. Therefore, all of these cases enunciate principles which no way conflict with th .

principle contended for here by appellee, namely, there was a fundamental change in the character of the work done and the pavement laid, of which no personal notice whatever was given to appellee, and therefore, for the reasons set forth in the Mims brief, to which reference is made, there was no right to recovery. The issue squarely joined in this case is, whether two strips, with an elemination of the center, is the same improvement as a pavement from curb to curb.

An opportunity to do this work under personal notice is a condition precedent to the imposition of liability. With reference to the question of allowing a recoupment or set-off, with deference, we submit, this question has been settled by the *City of Jackson* v. *Williams, supra.*

Finally, with deference, we submit that Mrs. Buckley was *non compos mentis,* and that the attempt to operate the doctrine of estoppel is not possible, and, under the decisions of this state, it is not feasible so to do.

We insist that the assessment in this case was an entirety, embracing elements of a lead pipe and other improvements which are confessed to not be assessed against the property, and having been embraced within the terms of the assessment, wherefor this suit is brought; and, with deference, we submit that this suit must fail because an assessment is a tax and as a tax is an entirety, and it is not possible to eliminate therefrom, by segregation, illegal elements, and sue only for those which are lawful.

We respectfully submit that the decree of the chancery court is correct and should be affirmed.

STEVENS, J., delivered the opinion of the court.

The city of Jackson exhibited its bill of complaint against the appellee to enforce an assessment and lien for special improvements for street paving, under sec.

tions 3411 and 3412,. Code of 1906. There was an answer and cross-bill and the cause was submitted to the chancellor upon bill, answer, and cross-bill, answer to the cross-bill, agreed statement of facts, and certain testimony. This is one of a series or number of cases between the city of Jackson and the abutting property owners on North State street between Manship street and Euclid avenue. The first case submitted to the court was that of *Sparks* v. *City of Jackson* reported in 118 Miss. 592, 79 So. 67. The Sparks Case was appealed from an order overruling a demurrer to a bill of complaint in all material respects similar to the bill of complaint in the present case. There was an agreed statement of facts effective in all these North State street paving cases. This statement is as follows:

"It is agreed by and between W. E. Morse and the city of Jackson and Green & Green, attorneys for Mrs. Agnes Buckley, that the following constitutes a statement of facts in all the paving cases on North State street between Manship street and Euclid avenue.

"The ordinance declaring the work necessary passed June 6, 1911, as found in M. B. L., page 95, and was duly published in the Clarion-Ledger for three weeks according to law. The ordinance directing the street commissioner to advertise for bids was passed July 4, 1911, found in M. B. L., page 127. This was advertised according to law. On August 1, 1911, the grade was established. This is found in M. B. L., page 150. This was advertised in the Clarion-Ledger according to law. The ordinance relating to special assessment, etc., was passed August 1, 1911, and is found in M. B. L., page 150. This was duly advertised according to law.

"Plans and specifications were adopted and the street commissioner was directed to give notice to the property owners on August 1, 1911, and is found in M. B. L., page 151. This was duly published according to law. Notices by the street commissioner, J. M. McLeod, were actually

given or posted between the dates of the 23d day of August, 1911, and the 11th day of September, 1911. On September 5, 1911, M. B. L., page 185, there was an amendment to the plans and specifications. This amendment was published September 15, 20, 29, and October 1, 1911.

"At the time of the amendment there was a contract entered into by and between the city of Jackson and the Jackson Light & Traction Company, in which contract the city agreed to release the street car company from paving North State street from Manship street to Euclid avenue. This was based on the consideration of the settlement of certain litigation pending between the parties. This contract was passed September 5, 1911, found in M. B. L., page 171 et seq. This was duly published in the Clarion-Ledger on September 20, 29, and October 1 and 4, 1911.

"The street commissioner was directed to do the work on October 3, 1911. See M. B. L., page 185. Report of the street commissioner was made May 7, 1912. See M. B. L., page 298; both of which were published according to law. An ordinance to carry into effect the ordinances of the city of Jackson in respect to paving on North State street from Manship street to Euclid avenue, and to carry into effect the contract between the city of Jackson and the Creosote Wood Block Company, was duly passed May 7, 1912, and advertised in the Daily News, May 16, 1912. Special assessment against property owners, under sections 3411 and 3412 of the Code of 1906, was levied May 7, 1912, M. B. L., page 305 et seq. This was advertised in the Daily News, May 17, 1912.

"At the time the city contemplated paving this portion of North State street Messrs. Watkins & Watkins and R. P. Willing got up a petition asking that this part of the street be paved. No mention was made of the material, but at the time the petition was presented Mr. A. C. Crowder, the mayor, informed Mr. Watkins that it

would probably be necessary to eliminate the paving of the street car line as the company at that time was in bad financial condition. Mr. Watkins, while not representing the property owners, stated that he thought this would be all right. Later Messrs. Watkins & Watkins represented the Creosote Wood Block Company at the time they put down this paving on this street.

"There is no item of maintenance charged against the property owners. The city does not attempt to collect for lead pipe connections placed under the streets by the city, although the same was assessed as a separate item but along with the paving and curb.

"The work actually started on or about——1911; the street being graded all the way across. None of the property owners protested against the laying of the paving. If they did, they did not put it in writing. Neither was there a majority protesting against the paving as it was actually laid. No one appealed from the assessment.

"The section of the street which was unpaved washed badly, and especially upon the hillsides. The dirt having washed out from the track left a low place in the middle of the street about six inches lower than the paved street. It was practically impossible for a team or car to pass from one side of the street to the other side of the street on the hillside. There was, however, crossing provided at each intersection of the street.

"The wood block paving did not prove as satisfactory for hillside paving as the council had thought when they accepted the bid of the wood block paving company, the plans and specifications of which were on file in the office of the city engineer at the time notice was served. The plans and specifications were identical with the ones finally carried out, with the exception of the amendment which eliminated the street car area from being paved. The wood block when it was first put down exuded creosote, and if one walked in the street the creosote would

stick to the feet. After the sun had baked a largepart of
the creosote out of the wood blocks the blocks would buck-
le after a rain, and in some places where the earth had
been washed away from the car track it caused the curb to
be pushed in toward the car track.

"There was no taking of her property, or that of any
other party interested in this suit, or whose case depends
upon the decision in this case."

In addition to this statement there were introduced in
evidence certain ordinances and depositions of witnesses.
There was a decree for the property owner dismissing
the bill of complaint, and from this final decree the city
appeals.

The so-called cross-bill makes prominent the contention
that the street was paved with creosoted wood blocks;
that the work was improperly done in pursuance of a de-
fective plan; that there was a material departure from
the original plans and specifications, in that the center of
the street occupied by the Jackson Light & Traction Com-
pany, a street railway concern, was eliminated from the
paving plans; that the center so eliminated operated to
gather up the water which runs down hill along the car
tracks and by appellee's property and prevents passage
from one side of the street to the other; that the wood
blocks at first exuded creosote and rendered the paving
sticky to one's feet, and subsequently the blocks would
buckle in places, and it is alleged that the paving proved
unsuitable for hillside paving and damaged the property
of the defendant and cross-complainant.

The contentions on this appeal may be classified or
grouped under the general propositions: (1) That the
plans and specifications were changed, whereby the street
car track between Manship street and Euclid avenue was
eliminated, and the effect of this change was and is a
fundamental variance and operates to impose upon the
abutting owners an improvement which they did not

originally ask for and against which they had no opportunity to protest; (2) that the improvement was never sufficiently decribed and the ordinances sufficiently complied with; (3) that the paving was unsatisfactory and a positive damage to the abutting owners.

While there is an effort to discriminate the issues in the case before us from the legal questions presented in *Sparks* v. *City of Jackson,* 118 Miss. 502, 79 So. 67, we are unable to see any real difference between these cases. It is true the Sparks Case was submitted on a demurrer to the bill, but all legal questions raised in the instant case were raised and argued in the Sparks Case. It only remains to determine whether the facts support the cross-bill of the appellee or differentiate the present case from the Sparks Case, and whether appellee has availed herself of the remedy prescribed by law. We conclude that upon the law and the facts the final decree in this case must be reversed. It is agreed that the appellee made no protest and prosecuted no appeal from the order of the municipal authorities making the special assessment under attack. In *Union Savings Bank & Trust Co.* v. *City of Jackson,* 84 So. 388, decided April 10, 1920, headnote No. 4 reads as follows:

"Section 22, chapter 260, Laws 1912, giving the right of appeal from a special assessment made after notice to property owners, by municipal authorities with right to trial on such appeal, is exclusive, and, if no right is taken, the assessment is final and binding on the owner."

This is a recent pronouncement of this court, but whether upon this ruling and this ruling alone we could base a reversal of the present case we need not determine The notice in the case at bar was served in 1911, before the enactment of chapter 260, Laws of 1912.

Appellee attempted to present a cross-bill claiming by way of offset certain alleged damages to her property. It might be well to say that we find no merit in the cross-action. The final decree in this case makes no express

disposition of the cross-bill.  But under the pleadings and facts the cross-bill presents neither a defense nor just cause for affirmative relief.  It is not a case where the city contracted for asphalt and thereafter accepted at the hands of the contractor a different paving, such as creosoted wood blocks.  The only contract which the city let was a contract for creosoted wood blocks.  There was no fundamental variance between the contract and the work actually done and accepted.  There is testimony that the wood block paving exuded creosote when the blocks were new, and afterwards to some extent buckled in places.

The general question as to whether defects in the work constitute a defense to an assessment for a local or public improvement is discussed and the authorities set forth in case note to *People ex rel. Raymond* v. *Whidden* (Ill.), 56 L. R. A. 905.  The present action is one to foreclose a lien on appellee's property, and in the absence of fraud the general rule of law is well settled that where the work has been done the municipality must be the judge as to whether the contract has been complied with.

In *Church* v. *People ex rel.,* 174 Ill. 366, 51 N. E. 747, the court quoted with approval from Judge COOLEY in his work on Taxation, as follows:

"In general, no defense to an assessment that the contract for work has not been performed according to its terms is allowed.  But this doctrine must be confined within the proper limits.  It cannot be extended to cover a case in which the authorities, after contracting for one thing, have seen fit to accept something different in its place, for, if this might be done, the statutory restraint upon the action of local authorities in these cases would be of no more force than they should see fit to allow."

This, we think, announces the true line of demarcation. The general contention that the original plans called for paving from curb to curb, whereas the city by proper or-

dinances changed the plans and eliminated a strip of neutral ground in the center of the street occupied by the railway company, presents no legal defense. This point was expressly ruled against the contentions of the property owner in the Sparks Case. There is no element of fraud in the case at bar. The failure to pave the space between and near the street car tracks did not affect the right of the city to require the abutting property owner to pave one-third of the street directly in front of his property. Cyc., vol. 28, p. 1111, and footnotes 6 and 7. Notice to the property owner was duly served, and from all the Mississippi authorities pertaining to special or public improvements we can see no fundamental error in the proceedings here under attack, and no good reason why the bill of complaint was by the learned chancellor dismissed. It follows that the decree in this particular case must be reversed, the bill of complaint sustained, and the cross-bill dismissed, and the case remanded for appropriate proceedings enforcing the lien of the city.

*Reversed and remanded.*